UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>PARAMPAL SINGH, individually and d/b/a MCHENRY'S BAR & RESTAURANT,<br>            Defendant. | Case No.: 1:13-cv-1453-LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Doc. 10) |

**INTRODUCTION**

On February 6, 2014, J&J Sports Production, Inc. ("Plaintiff") filed the present motion for default judgment against Defendant Parampal Singh, individually and doing business as McHenry's Bar & Restaurant ("Defendant"). (Doc. 10). Defendant has not responded to the motion or otherwise appeared in this lawsuit. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for March 28, 2014. On April 15, 2014, the Court issued a minute order requesting additional briefing supporting valid service of the summons and the complaint in this action, which was submitted on April 16, 2014. (Docs. 16, 17). Having considered the moving papers, the supplemental briefing, and the Court's file, the Court

1

RECOMMENDS that Plaintiff's motion for default judgment be GRANTED and judgment entered in the amount of $14,000.00 against Defendant.

**BACKGROUND**

On September 9, 2013, Plaintiff J&J Sports Production, Inc. ("Plaintiff") filed its complaint against Defendant, alleging violations of 47 U.S.C. § 605, *et seq.*, and 47 U.S.C. § 553, *et seq.*, as well as claims under California state law. Plaintiff claims that it was the exclusive commercial distributor of the program "*Julio Cesar Chavez, Jr. v. Sergio Martinez, WBC Middleweight Championship Fight Program*" (the "Program"). According to Plaintiff, Defendant unlawfully intercepted and broadcast the telecast of the Program on September 15, 2012 at McHenry's Bar & Restaurant (the "restaurant"). The complaint alleges that Plaintiff was the exclusive commercial distributor of closed-circuit rights to the Program. Since Defendant operates the restaurant, a commercial establishment, and exhibited the Program there, Defendant could not have lawfully obtained the Program without contracting with Plaintiff. (Doc. 10 at 9). Defendant did not contract with Plaintiff, and thus must have wrongfully intercepted, received, and broadcasted the Program.

On January 6, 2014, after Defendant failed to file an answer, Plaintiff requested an entry of default against Defendant, which was entered by the clerk on that same day. (Doc. 7). On February 6, 2014, Plaintiff filed the instant motion for default judgment. (Doc. 10). Plaintiff's motion requests that the Court enter default judgment against Defendant for damages in the amount of $112,000.00. Plaintiff also submitted a supplemental declaration stating that, after this action was commenced, a second piracy action was brought against defendant Singh in this district. *See* Supplemental Declaration of Thomas P. Riley ("Riley Supp. Decl."), Ex. 4 (Doc. 10-4 at ¶ 4); *See Joe Hand Prod., Inc. v. Singh*, No. 1:13-cv-1484 LJO-SKO, (E.D. Cal.). Defendant has not appeared or otherwise defended this action.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174

2

(C.D. Cal. 2002) (*citing Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. *Id.* at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (*citing Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); *accord Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (*citing Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. *Geddes*, 559 F.2d at 560.order.

**DISCUSSION**

**1.     Adequacy of Service of Process**

As a general rule, and of particular importance considering the Court's prior reservations regarding the sufficiency of service of the summons and complaint, the Court considers the adequacy of service of process before evaluating the merits of Plaintiff's Motion for Default Judgment. *See BR*

3

*North 223, LLC v. Glieberman*, 2012 U.S. Dist. LEXIS 24288, 8-9 (E.D. Cal. Feb. 24, 2012). Under Fed. R. Civ. P 4(e), an individual such as Defendant Singh may be served by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    (A) delivering a copy of the summons and of the complaint to the individual personally; or

    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Plaintiff contends that service of the summons and complaint in this action was made on Defendant by substitute service on November 29, 2013. (Doc. 5). Plaintiff's proof of service states that process server Faheem Moore of Rezerac Meyer Attorney Service served a John Doe "Refused Name" at 35669 Carnation Way Fremont, CA 94536. According to the declaration of diligence, the process server attempted service at the residential address three times prior to substitute service. (Doc. 5). The following day, on December 2, 2013, Veronica Mancilla served the same documents via United States Mail to "Parampal Singh, 35669 Carnation Way, Fremont, CA 94536." (Doc. 5 at 2). True and correct copies of the Proof of Service were filed with this Court on December 9, 2013. (Doc. 5).

On April 4, 2014, the Court ordered Plaintiff to file supplement briefing explaining the basis for Plaintiff's belief that Defendant Singh may be served at the Carnation Way address. At the Court's request, Plaintiff submitted additional information to establish that, at the time of service, Defendant Singh was affiliated with the Carnation Way address. (Doc. 16). In the supplemental declarations, Counsel Thomas Riley and his assistant Stefanie Martinez produced records from governmental sources listing the Carnation Way address as the residential address used by Singh for his various businesses. *See* Supplemental Declaration of Thomas P. Riley ("Riley Service Supp. Decl."), (Doc.

17). Plaintiff contends that these documents establish that service on Defendant Singh at the Carnation Way address was proper.

In this case, Plaintiff effectuated service pursuant to Rule 4(e)(2)(B). The evidence produced by Plaintiff matches Singh's name and the Carnation Way address to multiple restaurants, including the one at issue here. Further, Defendant Singh is not an infant or an incompetent person, and is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Riley Decl., Doc. 10-2, ¶ 3). Accordingly, the Court finds that service of the summons and complaint in this matter at the Carnation address is sufficient to afford Singh with notice of this action.

## 2. Default Judgment

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's application for default judgment. First, Plaintiff would suffer prejudice if the Court does not enter default judgment because the Defendant has refused to participate in this litigation, and Plaintiff would have no other means of recovery. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Plaintiff's complaint also satisfies the second and third *Eitel* factors—the merits of the substantive claim and the sufficiency of the complaint—as it properly alleges the necessary elements of each cause of action against Defendant. To state a claim for an alleged violation of Section 605, the plaintiff must plead that the defendant received, assisted in receiving, or transmitted the plaintiff's satellite transmission without authorization. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). Plaintiff's complaint sets forth these allegations. (Doc. 1, ¶ 14, 18 (Plaintiff alleges that it was "granted the exclusive nationwide commercial distribution (closed-circuit) rights to [the Program]" and that Defendant "did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at the time of its transmission at his commercial establishment in Modesto, California.") Plaintiff also properly pleads a claim for conversion, of which the elements are "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005). Plaintiff's allegations that it had the right to possession of the property at the time Defendant allegedly intercepted and displayed it at his establishment, that

Defendant did not legally purchase the Program, and that exhibition of the Program in Defendant's establishment on September 215, 2012, constituted conversion by a wrongful act or disposition of property rights sufficiently pleads a claim for conversion under California law. (Doc. 1, ¶¶ 14, 17, 30-31.)

The fourth *Eitel* factor, the sum of money at stake, also weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff seeks an award of $10,000 for statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), enhanced statutory damages in an amount subject to the Court's discretion not to exceed $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $2,000 for conversion damages. Under the applicable statute, Plaintiff is entitled to seek a substantial amount in damages. Given that Congress expressly permitted a court to award statutory damages up to $110,000 per act of piracy pursuant to Section 605, it is incongruent to determine that the statutory damages requested are an unreasonably large sum that should not be awarded in default judgment; certainly Congress envisioned circumstances where the imposition of maximum statutory damages would be reasonable. Additionally, as set forth below, the actual award recommended by this Court is not of such an amount as to weigh against entry of default judgment. *See Joe Hand Promotions, Inc. v. Elk's Lodge Coalinga 1613*, No. 1:12-cv-01998-LJO-MJS, 2013 WL 5532043 (E.D. Cal. Oct. 7, 2013) report and recommendation adopted as modified, No. 1:12-cv-01998-LJO-MJS, 2013 WL 5969713 (E.D. Cal. Nov. 8, 2013).

With regard to the fifth *Eitel* factor regarding the possibility of dispute concerning material facts, no genuine dispute of material fact is likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to contradict the well-pled allegations. The sixth factor also weighs in favor of granting default judgment, as there is no evidence Defendant's failure to participate in the litigation is due to excusable neglect.

Lastly, while the policy favoring decisions on the merits inherently weighs strongly against awarding default judgment in every case, in the aggregate, this factor is outweighed in consideration of the other applicable factors that tip in favor of granting default judgment.

Accordingly, it is RECOMMENDED that Plaintiff's request for default judgment against Defendant be GRANTED.

**3.    Damages**

The only issue remaining relates to the award of damages, attorney's fees, and costs.

**A.    Statutory and Enhanced Damages**

Plaintiff seeks default judgment and an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory damages) in the amount of $110,000 against Defendant for unlawfully intercepting, receiving, and exhibiting the Program.  The Court finds these amounts unwarranted under the circumstances present in this case.

Section 605(a) provides that "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception . . . ."  Those who violate this Section are subject to the following civil penalty:

> [T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exclusive commercial exhibition licensing rights to the Program. Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. Plaintiff seeks substantial damages as a deterrent to Defendant and others continuing to pirate and commercially exhibit such broadcasts. Plaintiff contends that persistent signal piracy of Plaintiff's programming costs the company, its customers, and the community millions of dollars annually. Continued signal piracy, according to Plaintiff, is caused, in part, by the perceived lack of consequences as reflected in part by nominal or minimal damage awards by courts, for such unlawful

1 interception and exhibition. Plaintiff requests that it be awarded the maximum, $10,000 allowance for
2 statutory violations.

3 Plaintiff also seeks an award of significant enhanced statutory damages under Section
4 605(e)(3)(C)(ii) because Defendant's action in this case was willful—the technology is such that it
5 cannot occur inadvertently or innocently—and done for commercial advantage. Further, in a
6 supplemental declaration, Plaintiff advised the Court that a second action had been filed against
7 Defendant for signal piracy. (Doc. 14-4). Based on Defendant's status as a repeat violator, Plaintiff
8 argues that maximum enhanced damages are additionally warranted. Emphasizing the need for
9 deterrence as to this Defendant and others, Plaintiff requests that it be awarded $100,000 in enhanced
10 statutory damages.

11 Section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was committed
12 willfully and for purposes of direct or indirect commercial advantage or private financial gain, the
13 court in its discretion may increase the award of damages, whether actual or statutory, by an amount of
14 not more than $100,000 for each violation of subsection (a)" 47 U.S.C. § 605(e)(3)(C)(ii).

15 Plaintiff presents the following evidence in support of its request for damages. Defendant's
16 establishment is a large sports bar divided into two separate rooms with a maximum capacity of
17 approximately two hundred patrons. On September 12, 2012, the day of the Program, Gary Gravelyn,
18 an investigator from Gravelyn & Associates observed the Program airing at Defendant's commercial
19 establishment. *See* Declaration of Gary Gravelyn ("Gravelyn Decl."), Ex. 3 (Doc. 10-1 at 2). Mr.
20 Gravelyn reported that he entered McHenry's Bar & Restaurant at approximately 9:02 p.m. without
21 paying a cover charge. The Restaurant, located in Modesto, California, was in good condition and
22 featured approximately 21 television sets, described as 4 large screen televisions and seventeen 42-
23 inch "LCD" sets. Gravelyn Decl. at ¶ 2. Mr. Gravelyn conducted three head counts where the
24 program was displayed, with 125 people in the first count, 121 people in the second count, and upon
25 exit at 9:06 p.m., 120 people in the final count.

26 The Court finds *J & J Sports Productions, Inc. v. Basto*, instructive here. There, the defendant
27 operated a restaurant that showed a program to which J & J held distribution rights. 2011 U.S. Dist.
28 LEXIS 60416, 2011 WL 2197756, at *1 (N.D. Cal. Jun.6, 2011) (Hamilton, J.). The program at issue

was shown on one 42-inch LCD television. *Id.* at *2. The investigator counted 83 patrons and no cover was charged. *Id.* at *5. The capacity of the establishment was 150 people. *Id.* at *1. The sublicensing fee to show the broadcast at an establishment of that size would have been $4,200.00. The court awarded $5,000.00 for the violation of Section 553 and an additional $2,000.00 in enhanced damages, taking judicial notice of several other cases in which damages had been awarded, on default judgment, against the same defendant for similar violations. *Id.* at *4. The court noted that "defendants are not first-time offenders but have illegally intercepted several different transmissions." *Id*. However, it declined to award the maximum award of damages "[b]ecause the interception challenged in this action occurred before dismissal or judgment was entered in the other lawsuits, [and therefore] plaintiff ha[d] not demonstrated that the adverse outcome of its other enforcement actions ha[d] failed to deter defendants from further illegal activity." *Id.*

Like *Basto*, here, the evidence demonstrates that the Program was displayed at the restaurant for around 100 people. Even though the restaurant is a sports bar with multiple televisions, the Court can only infer that the program was shown on one television set as Mr. Gravelyn's affidavit did not state how many sets were displaying the program. Based on these circumstances, the Court determines that statutory damages in the amount of $8,000 for violation of section 553(a) is appropriate here to serve as a deterrent from future piracy. *See also Joe Hand Promotions, Inc. v. Singh,* 2014 U.S. Dist. LEXIS 42390 (E.D. Cal. Mar. 27, 2014) (related case awarding $8,000 in statutory damages based on an establishment with a capacity of approximately 200 people, with 85-90 people present); *See also Joe Hand Promotions, Inc. v. Garl*, 2013 U.S. Dist. LEXIS 103721 (E.D. Cal. July 24, 2013) (based on an establishment with a capacity of approximately 200 people, with 75-80 people present, the court awarded $5,000 in statutory damages).

With respect to other damages, some factors here weigh against a substantial award of enhanced statutory damages in this case. There is no evidence that Defendant (1) advertised the broadcast of the Program to entice a larger crowd, (2) charged a premium for food and drinks on the night the broadcast was shown, or (3) had a mandatory minimum cover charge. While the Court notes that Defendant had a significant number of patrons at the business during the Program, there is no

evidence that the number of customers was greater because of broadcast of the Program than it would have been without the broadcast.

Further, although in a supplemental declaration, Plaintiff characterizes Defendant as a repeat offender by identifying another case Plaintiff brought against Defendant in this Court, the additional case identified by Plaintiff was filed after the events alleged in this action occurred. Accordingly, Defendant was not on notice that his actions were in violation of the laws against unlawful interception. Any future violations may result in greater enhanced damages.

Weighing all of these factors, the Court recommends that enhanced statutory damages in the amount of $4,000—approximately two times the cost of the licensing fee be awarded under Section 605(e)(3)(C)(ii). This is an amount which should serve as a significant disincentive to defendant and others to try to profit directly or indirectly from the pirating, but also recognizes the absence of evidence that Defendant actively sought to profit directly or did actually profit from the pirating.

### B.  Damages for Conversion

Plaintiff also seeks $2,000.00 in conversion damages, the value of the property at the time of the conversion. (Doc. 10-2 at 2). Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc*., 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, the evidence supports the request for conversion damages. Plaintiff was granted the exclusive commercial licensing rights to the Program at issue, and thus had the right to possession of the property at the time of the conversion. (Doc. 10, Ex. 1). Defendant did not license the programming from Plaintiff, yet exhibited the Program in the restaurant on September 15, 2012. The exhibition of the Program constituted Defendant's conversion by a wrongful act or disposition of property rights. (Doc. 10, ¶¶ 6-7.) Finally, the evidence submitted by Plaintiff shows the amount Plaintiff would charge for a sub-license fee for the Program. For an establishment with minimum seating for 101-200 people, similar in size to Defendant's establishment, the license fee would have been $2,000.00. (Doc. 10, Ex. 2). Thus, Plaintiff lost the license fee of $2,000.00. Accordingly, Plaintiff is entitled to damages for conversion in the amount of $2,000.00.

### C. Attorney's Fees and Costs

Costs and reasonable attorney's fees are recoverable under 47 U.S.C. § 605(e)(3)(B)(iii). In Plaintiff's prayer for relief in the complaint, Plaintiff seeks an award of costs and attorneys fees pursuant to 47 U.S.C. § 605. Pl's. Compl. at 9. However, the motion for default judgment and the supporting documents do not contain any argument or documentation in support of such a request. Accordingly, because the record provides no basis for determining a reasonable award, the Court recommends that Plaintiff's prayer for attorneys' fees and costs be denied without prejudice to renewal accompanied by appropriate documentation to support the request for reasonable attorneys' fees and costs.

## RECOMMENDATIONS

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court **RECOMMENDS** as follows:

1. Plaintiff's motion for default judgment be GRANTED;
2. Judgment be entered in this action against Defendant Parampal Singh, individually and doing business as McHenry's Bar & Restaurant; and
3. Damages in the amount of $14,000.00 be awarded as follows:
   a. For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $8,000.00;

11

        b.      For the violation of 47 U.S.C. § 605(e)(3)(c)(ii), the sum of $4,000; and

        c.      For the conversion of Plaintiff's property, the sum of $2,000.00.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 23, 2014**                    /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE